Nos. 23-1719, 23-1941, 23-1959

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

————————————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

JULIAN OMIDI,

Defendant-Appellant.

————————————————

Appeal from the United States District Court
for the Central District of California
Honorable Dolly M. Gee, District Judge Presiding

APPELLANT'S SUPPLEMENTAL REPLY BRIEF

BENJAMIN L. COLEMAN
Benjamin L. Coleman Law PC
1350 Columbia Street, Suite 600
San Diego, California 92101
Telephone: (619) 865-5106
Email: blc@blcolemanlaw.com

*Counsel for Appellant*

## **TABLE OF CONTENTS**

Table of authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Introduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

The evidence was insufficient and the jury instructions were flawed as to
the 18 U.S.C. § 1028A count, requiring reversal of the conviction and the
two-year consecutive sentence. ... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A.    *De novo* review applies to the instructional claims. . . . . . . . . . . . . . 2
    B.    The jury instructions on the § 1028A offense were erroneous. . . . . . . 3
    C.    The co-schemer instruction tainted the § 1028A conviction . . . . . . . 11
    D.    The evidence was insufficient. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
    E.    Exceptions to waiver apply. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Certificate of compliance. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

i

# TABLE OF AUTHORITIES

## CASES

*Arthur Andersen LLP v. United States*,
544 U.S. 696 (2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Dubin v. United States*,
599 U.S. 110 (2023). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4,5,6,7,8

*Henderson v. United States*,
568 U.S. 266 (2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Lair v. Bullock*,
798 F.3d 736 (9th Cir. 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*McDonnell v. United States*,
579 U.S. 550 (2016). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Miller v. Gammie*,
335 F.3d 889 (9th Cir. 2003) (*en banc*). . . . . . . . . . . . . . . . . . . . . . . 4,7

*Pinkerton v. United States*,
328 U.S. 640 (1946). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Trader Joe's Company v. Hallatt*,
835 F.3d 960 (9th Cir. 2016). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*United States v. Alferahin*,
433 F.3d 1148 (9th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*United States v. Bailey*,
696 F.3d 794 (9th Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . 1,10,14

*United States v. Baldon*,
956 F.3d 1115 (9th Cir. 2020). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

ii

*United States v. Briones*,
    35 F.4th 1150 (9th Cir. 2021). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*United States v. Brown*,
    2024 WL 3631145 (9th Cir. Aug. 2, 2024). . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Cruz*,
    554 F.3d 840 (9th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*United States v. Disla*,
    805 F.2d 1340 (9th Cir. 1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Esquivel-Ortega*,
    484 F.3d 1221 (9th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*United States v. Gagarin*,
    950 F.3d 596 (9th Cir. 2020). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*United States v. Gomez*,
    115 F.4th 987 (9th Cir. 2024). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4,8

*United States v. Green*,
    592 F.3d 1057 (9th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Henry*,
    984 F.3d 1343 (9th Cir. 2021). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*United States v. Katakis*,
    800 F.3d 1017 (9th Cir. 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*United States v. Lindsey*,
    634 F.3d 541 (9th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*United States v. Murphy*,
    824 F.3d 1197 (9th Cir. 2016). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11,14

*United States v. Obagi*,
    965 F.3d 993 (9th Cir. 2020). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,10,14

*United States v. Osuna-Alvarez*,
788 F.3d 1183 (9th Cir. 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3,4,5,6,7

*United States v. Ovsepian*,
113 F.4th 1193 (9th Cir. 2024). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8,16

*United States v. Pallares-Galan*,
395 F.3d 1088 (9th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*United States v. Pelisamen*,
641 F.3d 399 (9th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*United States v. Peterson*,
140 F.3d 819 (9th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,10,14

*United States v. Pineda-Doval*,
614 F.3d 1019 (9th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*United States v. Rodriguez*,
880 F.3d 1151 (9th Cir. 2018). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*United States v. Salman*,
792 F.3d 1087 (9th Cir. 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*United States v. Slade*,
873 F.3d 712 (9th Cir. 2017). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*United States v. Spears*,
729 F.3d 753 (7th Cir. 2013) (*en banc*). . . . . . . . . . . . . . . . . . . . . . . . 5,6,7

*United States v. Stapleton*,
293 F.3d 1111 (9th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Stewart*,
420 F.3d 1007 (9th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*United States v. Studhorse*,
  883 F.3d 1198 (9th Cir. 2018). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*United States v. Tirouda*,
  394 F.3d 683 (9th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*United States v. Vazquez-Hernandez*,
  849 F.3d 1219 (9th Cir. 2017). . . . . . . . . . . . . . . . . . . . . . . . . . 8,9,11,14

*United States v. Vizcarra-Martinez*,
  66 F.3d 1006 (9th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

## STATUTES AND RULES

18 U.S.C. § 1028A. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Fed. R. Crim. P. 29. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

U.S.S.G. § 3B1.1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

## **INTRODUCTION**

Appellant Julian Omidi submits this reply to the Government's Supplemental Brief ("GSB"). The government's brief repeats a recurring theme of this case. Its theory that Mr. Omidi was the mastermind and director of the alleged fraudulent scheme had to lean heavily on cooperating-witness testimony, which invariably comes with significant credibility problems, and the cooperator testimony here was certainly no exception. As a result, the government hedged by seeking alternative theories of liability, fearing that the jury would not be convinced by its untrustworthy witnesses. When confronted with the invalidity of those theories, it retorts that it did not need them because it had overwhelming evidence. Why pursue them then? The answer is obvious.

The government did *not* have an overwhelming case, as jurors often discount cooperator testimony, as they rightfully should. For decades, this Court has rejected claims that overwhelming evidence rendered trial errors harmless when cooperator testimony was crucial to the government's presentation, and even in fraud cases where the evidence was far stronger. *See, e.g.*, *United States v. Obagi*, 965 F.3d 993, 998 (9th Cir. 2020); *United States v. Bailey*, 696 F.3d 794, 804-05 (9th Cir. 2012); *United States v. Peterson*, 140 F.3d 819, 823 (9th Cir. 1998). It should do the same here and reverse the 18 U.S.C. § 1028A conviction because it was based on defective theories of liability.

**ARGUMENT**

**The evidence was insufficient and the jury instructions were flawed as to the 18 U.S.C. § 1028A count, requiring reversal of the conviction and the two-year consecutive sentence.**

### A. *De novo* review applies to the instructional claims

The government claims that Mr. Omidi did not "distinctly" object to the challenged instructions, and therefore plain-error review applies. GSB 20. The only case cited by the government for its position is *United States v. Tirouda*, 394 F.3d 683 (9th Cir. 2005), where the defendant's claim on appeal was that the instruction at issue did not define the word "accomplice," but defense counsel did not object to the failure to define "accomplice," nor did he request that the instruction define "accomplice."

Here, Mr. Omidi "distinctly" objected to the language in the § 1028A instruction stating that "the government need not establish that the means of identification of another person was stolen." 2-ER-482. He "distinctly" argued that this language undermined the "without legal authority" element of § 1028A and would confuse and mislead the jury. *Id.* Likewise, Mr. Omidi "distinctly" objected to the co-schemer instruction, arguing that it did not limit the "offenses" covered by the instruction and that the jury should be required to find the specific elements of each offense beyond a reasonable doubt. 2-ER-470.

2

This Court and the Supreme Court have repeatedly rejected similar government arguments that challenges to jury instructions were not adequately preserved. *See Arthur Andersen LLP v. United States*, 544 U.S. 696, 707 n.10 (2005); *United States v. Rodriguez*, 880 F.3d 1151, 1159 (9th Cir. 2018); *United States v. Pineda-Doval*, 614 F.3d 1019, 1025-26 (9th Cir. 2010). Similarly, this Court has long recognized it is claims that are waived or forfeited, not arguments, and thus "variations" on arguments are permitted. *United States v. Henry*, 984 F.3d 1343, 1357-58 (9th Cir. 2021); *see United States v. Studhorse*, 883 F.3d 1198, 1203 n.3 (9th Cir. 2018); *United States v. Pallares-Galan*, 359 F.3d 1088, 1095 (9th Cir. 2004). In short, *de novo* review applies.[1]

### B. The jury instructions on the § 1028A offense were erroneous

The government contends that, under *United States v. Osuna-Alvarez*, 788 F.3d 1183 (9th Cir. 2015), the district court correctly instructed the jury on the § 1028A count that it need not find "that the means of identification of another person was stolen." 2-ER-482; GSB 8-10, 21-22. This Court's opinion in *Osuna-Alvarez* did not address the jury-instruction claim raised here, and therefore this Court need not necessarily overrule it. Nevertheless, even if *Osuna-Alvarez*

---

[1] Even if plain-error review somehow applies, reversal is appropriate, as discussed in the text.

3

somehow did resolve the instructional issue raised here, it has been effectively overruled by *Dubin v. United States*, 599 U.S. 110 (2023).  *See United States v. Gomez*, 115 F.4th 987, 996-98 (9th Cir. 2024) (Ninth Circuit precedent effectively overruled by subsequent Supreme Court opinion).[2]

*Osuna-Alvarez* did not address the jury instructions and only considered the sufficiency of the evidence.  *See Osuna-Alvarez*, 788 F.3d at 1184-86.  Even in the light most favorable to the defendant in *Osuna-Alvarez*, the evidence only showed that his brother gave his passport to him, not that the brother authorized him to use the passport to smuggle large quantities of drugs into the country.  *Id.* at 1184.  Indeed, this Court reasoned that § 1028A applies to situations "where an individual

---

[2] This Court is familiar with its *Miller v. Gammie*, 335 F.3d 889, 899-900 (9th Cir. 2003) (*en banc*) standard, which adopted a "more flexible approach" for determining when a three-judge panel can reconsider a prior panel's opinion. "[T]he issues decided by the higher court need not be identical in order to be controlling.  Rather, the relevant court of last resort must have undercut the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable."  *Id*. at 900; *see United States v. Lindsey*, 634 F.3d 541, 550 (9th Cir. 2011) (*Miller* "focus[es] on the reasoning and analysis in support of a holding, rather than the holding alone").  This Court follows an intervening Supreme Court opinion when it reshapes an area of law by announcing a new or clarified analytical framework that the earlier Ninth Circuit decision never applied and where the reasons for a previous panel decision necessarily rested on at least one assumption that is irreconcilable with the intervening authority.  *See United States v. Baldon*, 956 F.3d 1115, 1121 (9th Cir. 2020); *United States v. Slade*, 873 F.3d 712, 715 (9th Cir. 2017); *Trader Joe's Company v. Hallatt*, 835 F.3d 960, 967-68 and n.4 (9th Cir. 2016); *Lair v. Bullock*, 798 F.3d 736, 746 (9th Cir. 2015).

grants the defendant permission to possess his or her means of identification," but that initial grant of possession does not mean that the victim authorized the defendant to use the means of identification in the manner that he did. *Id.* at 1185. *Osuna-Alvarez* did not hold that it is permissible to instruct the jury that it need not find that the means of identification was stolen without any further clarification or guidance, as *Osuna-Alvarez* did not even discuss the jury instructions.

Even if *Osuna-Alvarez* and *United States v. Gagarin*, 950 F.3d 596, 604 (9th Cir. 2020), also cited by the government, can somehow be interpreted as resolving the instructional claim made by Mr. Omidi (even though the jury instructions were never considered or even mentioned), they have been effectively overruled by *Dubin*.[3] *Gagarin* recognized that *Osuna-Alvarez* conflicted with the Seventh Circuit's *en banc* opinion in *United States v. Spears*, 729 F.3d 753 (7th Cir. 2013), and that *Osuna-Alvarez* had oddly cited the *vacated* three-judge panel opinion in *Spears* to support its view. *See Gagarin*, 950 F.3d at 605 n.3. In *Dubin*, however, the Supreme Court adopted the Seventh Circuit's view of identity *theft* as stated in the *en banc* opinion in *Spears*. *See Dubin*, 599 U.S. at 123 (citing the *en banc*

---

[3] The pre-*Dubin* opinion in *Gagarin* also did not involve a claim concerning the jury instructions and simply cited *Osuna-Alvarez* to address a sufficiency claim. Furthermore, the defendant in *Gagarin* conceded the applicability of *Osuna-Alvarez* to his sufficiency claim.

opinion in *Spears* to reason that "[t]his central role played by the means of identification, which serves to designate a specific person's identity, explains why we say that the 'identity' has been stolen").

The Supreme Court also explained why the analysis in *Osuna-Alvarez* led to the wrong conclusion. *Osuna-Alvarez* casually dismissed the defendant's reliance on the "Aggravated Identity Theft" title of § 1028A. *See Osuna-Alvarez*, 788 F.3d at 1185. In *Dubin*, however, a primary explanation for the Court's interpretation of § 1028A was that the statute's title makes clear that it was meant to cover identity *theft*, and it is within this discussion of the title that the Supreme Court approved of the Seventh Circuit's approach in *Spears*. *See Dubin*, 599 U.S. at 120-23.

Importantly, *Osuna-Alvarez* only focused on the words "without lawful authority" appearing in § 1028A, and it did so in isolation. *See Osuna-Alvarez*, 788 F.3d at 1185. *Dubin* rejected the government's similar interpretive approach, which sought to read the words in § 1028A "in isolation." *Dubin*, 599 U.S. at 117. Instead, the title of § 1028A and each of its elements must be read together, as all of the terms together provide the context for the statute's meaning. *Id.* at 118-19 (the statute's terms cannot be "taken alone" and instead "[r]esort to context" is "especially necessary"). The complete context of § 1028A required a "narrower reading" of the statute limited to identity *theft*. *Id.* at 120-22.

6

Unlike *Osuna-Alvarez*, which limited its analysis to the "without lawful authority" language, *Dubin* concluded that such language had to be read together with the "use," the "in relation to," and the "another person" language in § 1028A, all of which make clear that stealing another person's identity must be at the crux of the underlying offense. *Id.* at 123-25 (statute covers using "a means of identification belonging to 'another person'" and "to unlawfully 'possess' something belonging to another person suggests it has been stolen"). Chief Judge Easterbrook's unanimous *en banc* opinion in *Spears* relied on the "another person" language together with the title of § 1028A, *see Spears*, 729 F.3d at 756-57, the same analysis that the Supreme Court adopted in *Dubin* while relying on *Spears*. *See Dubin*, 599 U.S. at 122-25.

Thus, *Osuna-Alvarez* is "clearly irreconcilable with the reasoning or theory of intervening higher authority," and therefore this Court "should consider itself bound by the later and controlling authority, and should reject the prior circuit opinion as having been effectively overruled." *Miller*, 335 F.3d at 893. Indeed, this Court is bound not only by holdings of Supreme Court opinions, "but also by their 'mode of analysis.'" *Id.* at 900 (quoting Antonin Scalia, *The Rule of Law as a Law of Rules*, 56 U. Chi. L. Rev. 1175, 1177 (1989)).

Rather than addressing the language and mode of analysis in *Dubin*, the

7

government cites the unpublished memorandum in *United States v. Brown*, No. 22-50158, 2024 WL 3631145, at *2 (9th Cir. Aug. 2, 2024) to argue that *Osuna-Alvarez* is still good law.  Obviously, *Brown* is not controlling because it is unpublished.  Furthermore, *Brown* only reviewed for plain error, while *de novo* review applies here.  In addition, *Brown* reasoned that *Dubin* did not apply because the government relied on a "possession" theory to show a violation of § 1028A, not a "use" theory.  Unlike *Brown*, this case involves a "use" theory, and, in any event, this Court explicitly rejected the rationale in *Brown* in its subsequent published opinion in *United States v. Ovsepian*, 113 F.4th 1193 (9th Cir. 2024), which held that *Dubin* also applies to possession cases.  In short, the government has relied on an unpublished, distinguishable, plain-error case that has been overruled by published Ninth Circuit precedent.[4]

Under *Dubin*, the instructions were erroneous or at least impermissibly misleading and confusing when they told the jurors that they did not have to find that Dr. Zarrabi's means of identification had been stolen without any further explanation.  *See United States v. Vazquez-Hernandez*, 849 F.3d 1219, 1225-29 (9th

---

[4]  In *Gomez*, this Court held that its precedent had been effectively overruled by the Supreme Court even though unpublished Ninth Circuit memoranda had continued to rely on the outdated precedent after the relevant Supreme Court opinion.  *See Gomez*, 115 F.4th at 996-98.

8

Cir. 2017). The jury certainly could have interpreted the instructions as permitting conviction under § 1028A even if Dr. Zarrabi had authorized the use of his name, as the instructions did not require the scope of any authorization to have been exceeded.[5] Indeed, the government's position is that § 1028A has no such requirement, and it cannot logically suggest that its proposed instruction nonetheless incorrectly conveyed an additional burden of proof. Moreover, the government did not even argue lack of authorization or exceeding authorization during its closing argument, 49-ER-9767-68, further suggesting to the jury that there was no such requirement.

The government summarily contends that any error was harmless beyond a reasonable doubt. GSB 22. Given the lack of proof that Dr. Zarrabi did not authorize the use of his name, the government cannot satisfy its heavy burden of showing harmlessness beyond a reasonable doubt. *See McDonnell v. United States*, 579 U.S. 550, 579-80 (2016). The government has no persuasive response to the fact that its own star cooperating witness, Charles Klasky, testified that Dr.

---

[5] The government contends that the petitioner in *Dubin* did not even contend that § 1028A requires the means of identification to be stolen, GSB 11, but the part of the petitioner's reply brief cited explicitly argued that the government had to prove the scope of authorization was exceeded and pointed out that the Solicitor General conceded as much. Interestingly, the government says nothing about the Solicitor General's concessions in *Dubin*.

9

Zarrabi authorized the use of his signature, even during the period when his payments were delayed.  30-ER-6022.  It only attempts to suggest that Klasky somehow later "clarified" that testimony, but he did no such thing.  GSB 16 (citing 30-ER-6022-23).  In short, its own star witness undermined any theory that Dr. Zarrabi did not authorize the use of his signature.

Even the record citations provided by the government indicate that just because there was a delay or stoppage in payments during 2014, that did not mean authorization had been withdrawn.  35-ER-7048-49.  The government maintains that Dr. Zarrabi stopped reviewing the sleep studies as early as 2010, GSB 4, but that does not mean that his signature was being used without his authorization.  Indeed, the government's essential theory of the case was that he was participating in the fraud by allowing his signature to be used even though he was not reviewing the studies.[6]

Finally, even if plain-error review somehow applies, reversal is appropriate.

---

[6] While the government maintains that it presented an overwhelming case of a "pay-to-play" scheme, it neglects to mention that the jury acquitted Dr. Zarrabi on all counts, and his defense was that he reviewed all of the sleep studies.  49-ER-9790-91.  The reality is that the government's case was mainly based on particularly unimpressive cooperating-witness testimony, and this Court has repeatedly rejected claims of overwhelming evidence and found that errors were prejudicial in similar situations.  *See, e.g.*, *Obagi*, 965 F.3d at 998; *Bailey*, 696 F.3d at 804-05; *Peterson*, 140 F.3d at 823.

The error was plain or obvious under *Dubin*, as the plainness of the error is evaluated at the time of appellate consideration. *See Henderson v. United States*, 568 U.S. 266 (2013). And, as discussed above, there was prejudice meriting reversal given the weakness in the evidence of identity *theft* as required for § 1028A. *See Vazquez-Hernandez*, 849 F.3d at 1225-29 (reversing for instructional error under plain-error review); *United States v. Murphy*, 824 F.3d 1197, 1204-05 (9th Cir. 2016) (finding evidence sufficient but reversing for instructional error under plain-error review).

### C. The co-schemer instruction tainted the § 1028A conviction

The government's position on the merits as to whether a co-schemer theory can apply beyond mail and wire fraud offenses is not entirely clear. The government seems to recognize that a co-schemer theory is only meant to apply to substantive mail and wire fraud charges, but it half-heartedly contends that it is "akin to *Pinkerton* liability," *see Pinkerton v. United States*, 328 U.S. 640 (1946), which would supposedly allow conviction for a § 1028A violation. GSB 26.

Even if there are similarities to *Pinkerton* liability, co-schemer liability does not require a conspiracy and therefore is limited to substantive mail and wire fraud offenses. *See United States v. Green*, 592 F.3d 1057, 1070 (9th Cir. 2010); *United States v. Stapleton*, 293 F.3d 1111, 1118-19 (9th Cir. 2002). Thus, whether or not

11

*Pinkerton* applies to § 1028A (it shouldn't) is irrelevant, as there was no *Pinkerton* theory based on a conspiracy in this case. *See United States v. Disla*, 805 F.2d 1340, 1350 (9th Cir. 1986) (failure to give *Pinkerton* instruction "precludes our consideration of this theory as a ground for affirmance").

The government contends that the context of the co-schemer instruction made it clear that it only applied to mail and wire fraud offenses. GSB 24-25. By making this argument, it appears that the government does really concede that co-schemer liability is limited to mail and wire fraud offenses. The context of the instructions, however, certainly did not do enough work to offset its plain language, which told the jury that it could find Mr. Omidi guilty of any "offense" if it was reasonably foreseeable and in furtherance of the scheme. 2-ER-370.

The government mostly focuses on an argument that the instructional error was harmless and contends that the prosecutor did not mention co-schemer liability when discussing the § 1028A count. GSB 25. During summation, however, the prosecutor globally emphasized that the co-schemer instruction could be used to convict Mr. Omidi for any "reasonably foreseeable" co-schemer conduct. 49-ER-9737. Furthermore, the brief comments made about the § 1028A count did not even specifically assert that Mr. Omidi personally participated in the conduct related to the sleep study at issue. 49-ER-9768.

12

The government similarly contends that the instructional error was harmless because its theory was that Mr. Omidi led and organized the fraud, and it presented overwhelming evidence in that regard. GSB 23-24. While *one* of the government's theories may have been that Mr. Omidi directed the fraud with actual knowledge and purpose, it also insisted on reckless-indifference and deliberate-ignorance instructions and advanced those alternative theories during summations as grounds for conviction. 49-ER-9737-38. In other words, the jury could have convicted even if it found that Mr. Omidi did not organize and direct the scheme.

The government repeats a comment made by the district court at sentencing in support of its flawed view that the evidence was overwhelming. GSB 27; *see* 1-ER-155. In context, the district court's brief comment, made without any supporting explanation, was that the evidence supported a role adjustment under U.S.S.G. § 3B1.1, a finding that merely needs to be made by a preponderance of the evidence and that essentially assumes the validity of the guilty verdict. 1-ER-155. Aggravating role under the Guidelines only requires some organizational role, and the comment did not address the weight of the evidence as to Mr. Omidi's intent or materiality. Even if the comment somehow had more meaning, as maintained by the government, this Court has rejected more specific district-court commentary to justify harmless error, and specifically in the context of a case

based on cooperator testimony.  *See Peterson*, 140 F.3d at 823.

The evidence that Mr. Omidi was the mastermind directing the scheme was hardly overwhelming, as it was essentially based on cooperator testimony tainted with credibility problems.  *See Bailey*, 696 F.3d at 804-05; *see also Obagi*, 965 F.3d at 998; *Peterson*, 140 F.3d at 823.  This was not a fraud case where procedures were billed that were not performed; there was also no "smoking-gun" email or confession by Mr. Omidi.  In *Obagi*, for example, this Court found prejudice in a more clear-cut fraud case where the defendant confessed.  In short, the main evidence that Mr. Omidi "directed" the fraud was cooperator testimony, and at least some of the jurors could have easily discounted such testimony, as they often do, and decided to convict based on the co-schemer instruction and a reasonably foreseeable theory.

Finally, even if plain-error review somehow applies, reversal is appropriate.  The error was "plain," so much so that the government now appears to concede that co-schemer liability is limited to substantive mail and wire fraud charges.  *See United States v. Alferahin*, 433 F.3d 1148, 1157 (9th Cir. 2006) (instruction is plainly erroneous when it conflicts with Ninth Circuit precedent).  And, for the reasons discussed above, the error was prejudicial and justifies reversal.  *See Vazquez-Hernandez*, 849 F.3d at 1225-29; *Murphy*, 824 F.3d at 1204-05.

14

### D.  The evidence was insufficient

While this Court should reverse the § 1028A conviction due to the instructional errors, it should also reverse due to the insufficiency of the evidence. The parties dispute whether review should be *de novo* or under the plain-error standard.  GSB 8 n.2.[7]  In any event, this Court has repeatedly explained that the difference in the sufficiency context is merely "theoretical" or "academic" and thus does not really matter.  *Pelisamen*, 641 F.3d at 408-09 n.6; *United States v. Cruz*, 554 F.3d 840, 844-45 (9th Cir. 2009); *United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1010 (9th Cir. 1995).

The government contends that the jury could infer that Dr. Zarrabi did not review the sleep study and did not authorize the use of his signature as to the study alleged in Counts 21 and 32 because it introduced a summary chart showing when payments were made to him.  GSB 12-16.  This mere summary was far from clear regarding the correlation of Dr. Zarrabi payments to specific sleep studies, and, regardless of the timing and specificity of the payments, the government's own star

---

[7] There is tension regarding whether and when a defendant must renew his Fed. R. Crim. P. 29 motion after the close of all evidence to trigger *de novo* review, *see United States v. Pelisamen*, 641 F.3d 399, 408-09 n.6 (9th Cir. 2011); *United States v. Stewart*, 420 F.3d 1007, 1014 (9th Cir. 2005), and renewal was not required here, as it would have been a formality or otherwise futile.  *See United States v. Esquivel-Ortega*, 484 F.3d 1221, 1224-25 (9th Cir. 2007).

15

witness testified that Dr. Zarrabi had authorized the use of his signature regardless of any delays or stoppages in payments. 30-ER-6022. The government claims that Klasky somehow later "clarified" that testimony, but he did no such thing. GSB 16 (citing 30-ER-6022-23).

Despite the government's contention, Mr. Omidi is not asking this Court to read the evidence in the light most favorable to *him*. GSB 14. Instead, his argument is that the government did not prove the § 1028A charge *beyond a reasonable doubt* because its own main witness undermined its theory. *See United States v. Katakis*, 800 F.3d 1017, 1024-25 (9th Cir. 2015). In short, the government did not prove beyond a reasonable doubt that Dr. Zarrabi did not authorize his signature on the sleep study at issue, and the timing of the payments for his services was not at the *crux* of the alleged scheme. *See Ovsepian*, 113 F.4th at 1206-08.

### E. Exceptions to waiver apply

Finally, the government relies on *United States v. Briones*, 35 F.4th 1150, 1158 (9th Cir. 2021) to argue that Mr. Omidi has waived the arguments in his supplemental brief. GSB 5. In *Briones*, the defendant did not raise his new claim until a supplemental brief filed after this Court had already decided his appeal and his case had been remanded by the Supreme Court. Obviously, Mr. Omidi has

16

filed his supplemental brief before decision and even before oral argument. The government claims that *Dubin* was decided before Mr. Omidi submitted his opening brief, GSB 6, but the post-briefing opinion in *Ovsepian* put the § 1028A issues in a different light. In any event, the government has been given an opportunity to respond, and its 27-page answering brief doubled the length of Mr. Omidi's supplemental brief. Thus, the government has not been prejudiced, and the exceptions to waiver discussed in Mr. Omidi's motion to file the supplemental brief apply. *See United States v. Salman*, 792 F.3d 1087, 1090 (9th Cir. 2015).

## **CONCLUSION**

This Court should reverse the § 1028A conviction and the sentence.

Respectfully submitted,

*s/Benjamin L. Coleman*

Dated: October 28, 2024

BENJAMIN L. COLEMAN
Benjamin L. Coleman Law PC
1350 Columbia Street, Suite 600
San Diego, California 92101
Telephone: (619) 865-5106
Email: blc@blcolemanlaw.com
*Counsel for Appellant*

17

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Fed. R. App. P. 32(a)(7) and Ninth Circuit Rule 32-1, the

attached Supplemental Reply Brief is:

Proportionately spaced, has a typeface of 14 points or more, and
contains 4,040 words.

Date: October 28, 2024          *s/Benjamin L. Coleman*

BENJAMIN L. COLEMAN

18